The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, Mr. Wise. We'd be happy to hear from you. Thank you, Your Honor. May it please the Court. My name is Dave Wise. I'm here on behalf of Gary Day, both individually as the assignee for the surety, Hudson Insurance Company, with respect to monies that Hudson incurred as a result of bonded projects. There was a total of 25 bonded projects that are the subject of this lawsuit. And the issue comes down to a bank that had it followed the law, we wouldn't be here. Specifically, our brief refers to it as the Assignment of Claims Act. The trial court referred to it as the anti-assignment statute. In general, government contracts cannot be assigned. There's an exception for lenders. And that statute specifically protects banks that take assignments, lend to government contractors. You say it protects banks? I thought it protected the federal government. Well, it protects both, Your Honor. The bank is given the right. If they follow the assignment, and the issue comes down to was there written notice provided. And it's undisputed in this case that written notice was not provided from the bank to the government or to the surety on these 25 projects. We also know that the bank was aware of its obligation in 2009. They gave the written notice on other projects. But when Hudson got involved, the Bank of Georgetown made the specific decision not to give written notice assignment to both the government and to, more importantly, to Hudson Insurance Company, the surety. And when I say it protects the bank, if the bank had given written notice as required by the law, there would be no right for anyone to come back and ask for monies that were assigned to the bank. So it does protect the bank. It certainly protects the government as well. Well, how do you get into this suit? Well, actually, that's a good question, Your Honor. That is a good question. I get into this suit because Gary Day was one of the general indemnitors who were sued under the General Agreement of Indemnity from October of 2011 because eventually the underlying contractor, Persaud PCI, defaulted on a number of projects. They defaulted on both performance bond and payment bonds. And ultimately, the surety had a loss of around $3.8 million, and so they filed an action in the Eastern District of Virginia, and they're seeking to collect funds from all of the individual indemnitors, including PCI. During the course of that lawsuit, it was discovered for the first time that Bank of Georgetown had taken an assignment and that monies that were supposed to be paid from the government to PCI went straight into Bank of Georgetown's accounts. And so those monies, pursuant to an assignment that did not follow the law, did not go into PCI's account, and those funds eventually were used to pay other debts of PCI. The reason I get here is under the subrogation, and I believe we also have a direct cause of action under the Statute 41 U.S.C. 6305, which is sometimes referred to as the Anti-Assignment Act. Gary Day paid $1.7 million to satisfy the obligations that Hudson, as part of that Hudson agreed and assigned their rights that Hudson had. Hudson had the right under the doctrines of subrogation to pursue all claims on behalf of the United States government against any type of claims. They would also have the right to pursue any claims of PCI under the doctrine of subrogation. But this is all so indirect. It seems to me when you look at the statute, it protects the federal government, not banks, and the federal government might have a cause of action here under the act. But I don't see how you do. I mean, you're a surety and you may be some incidental beneficiary, but I don't see how you have a cause of action under this statute if the purpose of the cause of action is to let the federal government and its contracts know exactly who it's dealing with. And that seems to me so directly protective of a federal interest that they don't want the claims just being in contractual obligations just being assigned willy-nilly and the federal government being in the dark as to who it's even dealing with. And I don't see how you're even a part of that picture. You're sort of a bystander to it all. The surety is given specific protection under that statute, Your Honor. Written notice under B-6, it says, an assignee of an assignment under the subsection shall file a written notice of the assignment to the contracting officer, that's the government, to the surety who issues a bond on the project and the dispersing officer if any. The surety is specifically defined by statute that they're supposed to receive a written notice of it. And the reason the surety is harmed by it, if the surety knows that monies are going to be sent directly from the government to a bank, they can take steps. They can either, one, make a decision not to bond, which is what our complaint alleges, or they can take steps to make sure that they receive payment. So the surety is given the right to receive notice. And I will agree, Your Honor, there is not a lot of cases out there where a surety is trying to go after a bank. The case and the leading case I would submit was back in 1964, New Amsterdam Casualty Company. It's from the Second Circuit, very similar. The bank did not give required notice to the surety. The surety was allowed to pursue and recover monies that were paid directly to the contractor, who turned out to be bankrupt, and were used to pay other funds, not bonded projects and everything else. That is how we have the right under the Doctrine of Subrogation to pursue those claims. And the Second Circuit Court of Appeal decision has been the law of the land for the past 56 years. The first time, and what's interesting when I was preparing for it, back in 1964, this was a case of first impression, since there are no reported cases where an assignee bank has failed to give notice to the surety. Now, you ask, why would a bank not give written notice? If they give notice, they are protected. And that's notice to the federal government. I mean, you aren't party to a contract with the federal government, and you aren't party to a contract with the bank. Your sole dealings were with Persaud or PCI. And if they engaged in fraudulent activity, it would seem to me that the normal way that a lawsuit would develop would be for you to be suing Persaud. Because they are the ones that committed the fraud, and they are the ones that left you holding the bag. And yet, I don't, the natural litigation that would rise would be for the surety to sue Persaud. Now, you say, well, of course, the reason you're not pursuing them is that they're in bankruptcy, I suppose. But then you just take your place in line with other lenders. And the point is, when you're a surety, you assume these sorts of risks. You get a fee for it, and you get compensated for it. But you assume the risk that there's going to be a default and that you're going to be holding the bag. But, you know, you don't have any, I don't see that the bank has violated any duties to you. The bank has violated a duty to the federal government. And it's the one that has the cause of action. But the duty is one that doesn't run to you. Judge Wilkinson, I want to respond to the first part. The surety did sue Persaud. It was in the course of that that we discovered that there was a separate bank account, that money was assigned that we weren't advised of. Second, the statute requires, by law, it's not an option, for an assignment to be valid. There's written notice that has to be provided to the surety. The surety has a, surety bonds are often called an agreement. It's multi-layered. It protects the government under the performance bond, and it protects laborers and suppliers under the payment bond. A performance bond lists the obligee of those bonds as the United States government. When you file an action under the payment bond, it's in the name of the use and benefit of the particular subcontractor, but you list specifically the federal government. That is a payment bond. Same thing with the performance bond. Because if you look at New Amsterdam, that case specifically allowed a surety to pursue a claim that we're looking for. And you ask, this is an indirect way. I acknowledge that you don't see very many cases of these because we couldn't find many other cases other than New Amsterdam. But I will say this, the statute requires, it's the law, that if you want an assignment to be valid, you've got to give written notice to the surety. You've got to give that some meaning. All right, but what you're essentially doing here when you strip down a suit for its essence is you're trying to blame BG for Persaud's fraud. The guilty party here is Persaud. It is not BG. BG is a victim of the fraud. BG had it in their power to protect themselves. Had they given written notice, there would be no claim here. You had a certain duty too, and that is a duty of due diligence before you signed on as a surety to make sure that you were dealing with somebody on the up and up. I would submit, Your Honor, more often than not, the reason you don't see very many cases like this is banks always give written notice. Why? Because it protects them. Then the government can't go back and ask for the money to be recouped. That is why you normally don't see these cases. The question is, why didn't Bank of Georgetown do that? And you say that they did nothing wrong. They made the conscious decision to violate the law. They did not give written notice to the surety. And are we supposed to look at a statute and say that giving written notice to the surety means nothing? So there's a benefit to the government. Yes, I can see that. There's also a benefit to definitely the surety. The surety in this case would not have issued these bonds. I'd like to just, I'm running short on my time. I want to point out, I went through the complaint. There are a total of 25 bonds that were issued by Hudson in 2010 and 2011. The issue with Persaud using the money and filing it for different projects did not come up until 2012. Of those 25 bonded projects, 10 there was no problem. Ten, there were payment bond claims on them. And the other five, there were both payment and performance bond claims. These 25 projects, there was over 10 different states. We're not talking about just a one-off operation. BG entered into this with a pattern of not giving the surety notice on each one of those projects because we're not supposed to have, they had 25 chances to comply with the law. They didn't. Let me ask you about the law, which I think is the more fundamental question, and that is had the government not been involved, but you were just talking about some landowner, the government wouldn't have cared. They would not legislate as to whether a ban gives you notice. The whole reason the act was passed is for the benefit of the government. And my question is what principles do we follow to decide whether you as a surety have a cause of action under the act as distinct from the government? In other words, not every statute creates a cause of action, and there are criteria that the cases apply determining whether you can sue under an act. And you're trying to sue a bank with whom you had no relationship under an act which was designed by Congress to protect the federal government. And the reason you're in there is an incidental notice because that may help the federal government because you're the surety on some of the federal government's projects. But does that create a cause of action in you? It does, Your Honor. Number one, we're here on two reasons. The most presuming judgment, I was... Well, you're suing under the act, right? We are. We are suing under the act. You have to have a right to sue under the act. We do have the right to sue under the act, and that's what New Amsterdam... But you'll be implying a cause of action. Well, I'm only following the law of what the statute says. Well, I mean, Judge Niemeyer, it seems to me, asks a very valid question, and that is where do we get away with just, you know, implying causes of action? Well, there's several theories. Under the statute that is so self-evidently meant to protect one party. Can you reserve some of this for rebuttal, sir? Yes, I can, Your Honor. In fact, I'd be happy to. I'd just like to point out, we did assert account for negligence under Maryland law. The surety is part of the class. You guys, this panel is focusing on that it's only for the benefit of the government. If you read the statute, that's not what it says, and that's not what New Amsterdam says. With the rest, I'll save it for rebuttal. Thank you very much. Yeah, that's fine. Mr. Haggerty. Good morning. Police Department. I'm Richard Haggerty. I'm here on behalf of the United Bank, successor by merger to the Bank of Georgetown, BG's. It's been referred to in the papers. As Judge Wilkinson has pointed out, this is a case that's before you because we have a third party who's not before you who defrauded the two parties who are. Mr. Persaud, principal of PCI, defrauded my client to the tune of about $1.6 million. When he lied about the nature of various contract rights he claimed to have, which was the basis upon which you took draws under an existing line of credit. He ultimately pleaded guilty to that in federal court in the Eastern District of Virginia and served time. In addition, Mr. Persaud, if he didn't outright defraud, Hudson certainly breached his obligations under his general indemnity agreement with Hudson by not applying payments he received or his company received under those contracts to pay subcontractors and suppliers, and Hudson was ultimately forced to honor its obligation under the bonds that it had issued and to pay those subcontractors and suppliers. There are a number of reasons this court can affirm what the district court did, but I'm going to flip the script a little bit and talk about the summary judgment ground first because if the court affirms on summary judgment, it doesn't have to reach the decision or the question about whether or not the plaintiff has stated a cause of action either for negligence under Maryland law or under the anti-assignment access as he's arguing for. Judge Zinnis granted summary judgment in this case because she concluded as a matter of law that Hudson had possession of facts including but not limited to my client's loan documents, its security agreement, its financing statement, which was on record, bank statements that indicated that Mr. Persaud and his company had borrowed money and that my client had taken a security interest in all accounts owed to PCI. Accounts includes under the UCC all contract rights and that includes specifically but not limited to government contract rights. Whether Bank of Georgetown gave notice of the assignment of contracts or not, which it concededly did not in this case, has no effect upon whether it had a security interest perfected as a matter of Maryland law. Hudson had notice of that no later, no later than October of 2011 when it issued the second set of bonds. It was the first set in 2010, the second set in October 2011, pursuant to the general indemnity agreement that Mr. Day co-signed and which is why he's the party here today. Had it inquired further of its customer, PCI, of its principal, Mr. Persaud, of the Bank of Georgetown, which it knew existed and which it knew had a security interest, it would have learned that what PCI had been doing from the outset of this lending agreement in 2009 was directing everybody who owed it money, whether they was with the government or private owners, to pay money to a bank account at Bank of Georgetown, which was swept regularly to apply down the funds advanced to the line of credit and the balance of which was transferred to PCI's operating account to pay contractors. And had it learned that, it would have had all the facts it needed to know to assert all the claims it's asserting today or that Mr. Day is asserting today, whether or not those claims have merit. The statute of limitations run on this? Yes. I mean, that's another problem. It is a huge problem, Your Honor, because this lawsuit was filed in 2016, almost four and a half years after they had all the knowledge that they needed to do the diligent inquiry they should have done. The parties do not dispute, so far as I can tell, that the statute of limitations question in this case is determined by Maryland. This was a suit filed in the District of Maryland. It was in diversity. Maryland's statute of limitations law applies. The Maryland statute of limitations is three years. Maryland has adopted the discovery rule generally for statute of limitations. Under the discovery rule, a party that has actual knowledge of facts, which would have caused it, had it done due diligence to inquire further and to learn all the facts needed. The discovery rule has a should have known component. Exactly. They should have known. If they acted with the diligence that you, Judge Wilkinson, identified in response to Mr. Wise, they would have learned of this. Had they learned of it, they could have filed their claim or Mr. Day could have filed his claim within the three years of the statute. He did not. For that reason alone. There just seem to me a number of problems with this. One is the statute of limitations problem, and then the other is the one that Judge Niemeyer's question brought out, which is how do we just decide that a statute which contemplates the protection of the federal government in its contractual relationship somehow confers the cause of action upon a surety to a contractor. That's a real problem. Then the other thing deals with the surety contract itself. The whole business of suretyship is that you get a certain fee in return for accepting a certain risk. And, you know, a surety of all institutions, they have a due diligence. If you're going to be a surety of someone, you've got to do your due diligence. And it seems to me that the red flags just screaming from Mr. From PCI's conduct, which, you know, led not only to bankruptcy and everything else, but the fraudulent activities led to criminal indictment. And so, I mean, you can go at this from different angles, but there are just problems at every bend in the road. I certainly agree, Judge Wilkinson, and I think that Judge Zinus agreed, and I think it's significant that the motion she ultimately granted, both dismissing the complaint and granting summary judgment, was on a third amended complaint. This was Mr. Day's fourth attempt to state a claim or claims against my client. We had a lengthy argument before the district court on our motion to dismiss the first amended complaint, at which the judge made clear all of her concerns about the absence of allegations that would give rise to a cause of action. Well, you were a victim as much as anybody else, because the funds that were loaned to PCI were yours. Absolutely. And they were loaned for certain purposes, and you were given to understand through the representations that those loans were being expended for certain purposes. And as we now know, that wasn't at all the case. So it just strikes me as odd that someone who didn't perform the due diligence is now suing the bank, which, as I can see, was as much a victim of the fraud as anybody else, because those loan funds were for purposes that Mr. Persaud was just ignoring. That's exactly right, Judge Wilkinson. I mean, in fact, Mr. Persaud served almost 30 months in federal prison because of the bank fraud he committed against my client. He lied to my client to induce it to make advances under an expanded line of credit. The failure to make payments to the subcontractors on the government contracts for which he had received full payment is a separate issue, and it's an issue between him and his surety. It's more a contract issue than a fraud issue, in my view. But the fraud in this case was practiced against the Bank of Georgetown.  That's why he went to prison. That's why the U.S. Attorney's Office got involved. That's what opened up this can of worms for everybody. Let me find at this point, if my colleagues have some questions, it might be more fruitful if they do ask Judge Motz. I have nothing further. We have no questions. Thank you very much. Have a great day. Your Honors, I kind of feel like Davey Martinez, probably how he felt last May when he was looking at whether the Nats were going to win the World Series, but I'll give it a shot. I want to address the statute of limitations issue that you brought up. The court ruled, and in fact, we were only allowed to do discovery on the issue of statute of limitations. That's it. We weren't able to do any discovery to determine due diligence or why the bank decided in 2009 not to comply with the law requiring notice to the surety. But we can affirm on any ground, and I must say that the statute of limitations is only the beginning. It's a real problem for you, but it's only the beginning of your problem. Actually, I do agree. Let me just talk about the statute of limitations. In Maryland, it is a discovery rule. It's not new or should have known. It's actual knowledge or actual notice or inquiry notice is what the Maryland courts. Let me ask you, I was impressed by the memorandum, internal memorandum at Hudson that was generated before the second round of bonds was being issued. I forgot the gentleman's name who did it, but he came to the conclusion. He explained the risks, and he said, basically, I think we should do it. They were having a lot of concerns about the viability of PCI, about its practices, and they were being called upon to issue a second round of bonds. This memo goes through all the points of why this guy thought they should continue to issue a new set of bonds. It seems to me that memo in and of itself is indicative of the fact that the gentleman undertook some level of due diligence and failed to even pick up the phone and call the bank to inquire about the bank, which is probably the only real barrier to anything you had there. There was a UCC filing of it, which he was aware, which covered all assets and all receivables. Why he wouldn't talk with the bank about a risk? Just call them or send them a note. It seems to me you guys sort of said, well, we know the risk. This is a troubled client. They have financial difficulties. These projects are pretty good projects, and we can make a pretty good premium on them, but that's about the way the analysis went, and why isn't the information he considered, and that was available to him then, put him on notice of the problems he would have discovered had he conducted some kind of diligence. By that time, Your Honor, Hudson had been dealing with PCI on, I don't have the exact number, you know, 10, 12 different projects. Not a single notice had been provided by the bank. No, I'm not talking about the notice. My question is your client undertook some kind of inquiry. It stepped back and said, are we going to go ahead with these second funds? There are a lot of red flags. There were red flags. That's my whole point, that they assessed red flags. They said, we have red flags. We think these projects are good. We're going to buy them. Now, why wouldn't they, in view of that, at least give the bank a call, which is the only other financial institution that was involved and had taken a lien on every single asset that PCI had? And you guys knew that. The issue that we were dealing with, I believe, is the statute of limitations. Did that put us on inquiry notice? Well, that's the whole discussion we're having here. In 2011, there was no damage. There was no cause of action. I'm not talking about a cause of action or damage. I'm talking about understanding the relationship with the bank. You're claiming that if you had notice, you would have never gone into it. Correct. Well, if you had called the bank, you might have never gone into it. Actually, had we learned about that arrangement, Hudson would not have. You knew about a lot of it. You knew about a lot of it. You just didn't know about that escrow account, basically. It's like a construction arrangement. Some of the briefs indicated it was very unusual. I've been in that business as a lawyer for years, and that's the way construction financing occurs all the time. All the time, the bank gives written notice. I mean, that is what is the unusual part about it is the lack of notice. See, that's your cause of action or your alleged cause of action under the Act. And you're blaming everything on the fact that the bank didn't tell you, but you're the ones that are about to issue bonds. You're the ones that are about ready to begin putting risk out there and taking a premium for it. And not only you don't do it, and it wasn't in the ordinary course of business, you guys had suspicions at that point, and you announced them and said there are problems here. I think we should take the chance. Now, why in making that assessment wouldn't someone pick up the phone and spend three minutes on the phone talking to the bank? Your Honor, actual notice, it's undisputed that Hudson actually learned about this in July of 2013. That is what we know. We know for a fact that in 2011, by that time, there had been a year of dealings with the parties. Not a single notice of assignment was provided to the surety, which is traditional. How come you keep going back to that? I'm trying to point out a limitations issue. The question isn't whether they issued a notice. The question is whether you engaged in sufficient inquiry to prevent statute of limitations from beginning as of October 22. In October 2011, when the bond was issued, is what the judge, at that time there was no damage, no cause of action. The discovery rule, it doesn't even start until you have an action that accrues. What happened on summary judgment is the trial court ruled as a matter of law. Why didn't you have an action? The bank, you said, hadn't been sending you notices, so that's a cause of action. It's a violation, right? Well, we have to be injured by it. In other words, if they don't get notice and there's no injury— That's an interesting point because the statute says the consequences. The statute says a purported transfer in violation of this subsection annuls the contract or order insofar as the federal government is concerned, except that all rights of action to breach a contract are reserved to the federal government. That's the sanction the statute provides. The statute specifically states that written notice to the surety has to be given. I understand, but— It's got to have some meaning, and that's what New Amsterdam's Second Circuit in 1964 said. And the reason why you don't see very many cases of this, because banks, as a matter of course, they're going to issue the written notice of assignment. Why not? The question is, why didn't Bank of Georgetown not give written notice? They started out before we got involved. They gave written notice, but only when the Hudson's— Why wouldn't your client call the bank and say there was no default under any of the banking arrangements? To assure Hudson, why wouldn't Hudson call the bank and say, was the arrangement in good order? I can't sit here today and ask you why someone didn't make the first call. I can't either, but I read that memo with big interest, and it was a memo that was a thoughtful memo, but it was basically the guy's hunches. Actually, being a surety in construction, there are risks that you take and everything else. But when you're talking about whether it gives you notice, whether there's a cause of action, because the only cause of action we have here is because it's based upon the failure of giving written notice to the surety. And I say the statute has to give some meaning. I say that the case law supports us. What the contours of the cause of action are or the remedies or whatever. I mean, there are a whole lot of questions there, but Congress could have provided a cause of action if it wanted to. I don't think we can simply write one into the statute. But we've gone over and over this. And so I want to thank you for your argument. And we'd like to come down and greet counsel and move into a final case. Your Honor, thank you very much for the time. Well, we thank you for your argument. All right. Thank you.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Diana Gribbon Motz